**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PABLO MORALES, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 11 C 2115 |
| | ) | |
| GUY PIERCE[1], Warden, Pontiac | ) | Hon. George W. Lindberg |
| Correctional Center, | ) | |
|     Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court is Pablo Morales' ("Morales" or "petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 ("petition"). For the reasons set forth below, the petition is denied.

*I. Introduction*

Following a 2000 jury trial, the state of Illinois convicted Morales of the murder of Hugo Rodriguez ("Rodriguez"), under an accountability theory. The trial judge sentenced Morales to thirty-seven years imprisonment and Morales is currently serving his sentence at the Pontiac Correctional Center in Pontiac, Illinois.

In his petition, Morales asserts four claims for habeas relief. First, Morales argues that his statements to police were involuntary and coerced. Second, he argues that the evidence presented at his criminal trial was not sufficient to establish his guilt beyond a reasonable doubt. Finally, Morales argues that his trial and appellate counsel were ineffective. Morales claims that his trial counsel was ineffective for not seeking to suppress his statements to police, and that his appellate

---

[1]Randy Pfister is substituted for Guy Pierce as the proper respondent in this case because Mr. Pfister is the current warden at Pontiac Correctional Center. RULE 2(A) OF THE RULES OF GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS; FED. R. CIV. P. 25(d); *Bridges v. Chambers*, 425 F.3d 1048, 1049-1050 (7th Cir. 2005).

counsel was ineffective for not addressing the trial counsel's ineffectiveness on appeal.

*II. Relevant Facts*

Under 28 U.S.C. §2254(e)(1), the Court presumes that the state court's factual determinations are correct for the purposes of habeas review. The facts relevant to Morales' petition follow. In 1999, Morales was a member of the Spanish Gangster Disciples street gang ("Spanish Disciples"). The Insane Deuces ("Deuces") were a rival gang. The Spanish Disciples labeled February 11th "Deuce killer day," which Morales told detectives meant "kill a Deuce" day. Around 11:00 a.m. on February 11, 1999, Rickey Quezada ("Quezada"), a fellow member of the Spanish Disciples, contacted Morales and asked him for a ride to an Ombudsman School in Aurora, Illinois. Morales took his mother's red 1997 Pontiac Trans-Am, and prior to picking up Quezada, picked up Juan Guereca ("Guereca"), another fellow gang member.

Morales dropped Quezada off three or four blocks away from the school. Quezada told Morales and Guereca that he had to take care of some business and that he would be back in twenty minutes. After exiting the car, Quezada entered the Ombudsman school, walked into the classroom that Rodriguez was in and approached Rodriguez's desk. Quezada shot Rodriguez seven times and killed him. After the murder, Quezada got back into the Trans-Am and told Morales to drive away.

On February 16, 1999, Elgin police officers went to Morales' parents' home, where Morales lived. The officers had a warrant to search the red 1997 Trans-Am. Morales' father gave the police officers permission to enter his house and conduct a search. After talking to Morales' parents and finding and searching the Trans-Am, the police officers arrested Morales. After the arrest, officers interviewed Morales. The petitioner waved his Miranda rights and subsequently

asked to have his mother present for any further questions. Thereafter, one of the officers called Morales' mother. According to trial testimony, in his mother's presence, Morales admitted to having some involvement in Rodriguez's death, and agreed to give an audio-taped statement. Several members of the Elgin Police Department and an assistant state's attorney testified at trial that they interviewed Morales concerning his statement, and that none of them made any promises to him. Further, the assistant state's attorney testified that he specifically asked Morales whether the officers made him any promises, and Morales indicated that they had not.

On or about March 11, 1999, Pablo Morales was indicted on three counts of first-degree murder, although the state subsequently dismissed two of the counts. On November 19, 1999, Morales filed a motion to suppress his statements to the police, asserting that his statements were given involuntarily, based upon promises of leniency from the police. On April 27, 2000, the trial court began a hearing on the motion. On May 30, 2000, the trial court ruled that the only promises the police made to Morales were that his cooperation would be relayed to the State's Attorney's office and that he would be protected while in jail. The trial court found those promises to be permissible, and denied the motion to suppress.

On or about October 24, 2000, the case proceeded to a jury trial. On December 15, 2000, a jury found the petitioner guilty of first-degree murder. He was later sentenced to thirty-seven years in prison. Petitioner then filed a motion for a new trial, which was denied. He then filed a direct appeal to the Illinois Court of Appeals alleging: (1) that his inculpatory statements to the Elgin Police Department were coerced by promises of favorable treatment; and (2) that the evidence presented at trial was insufficient for a reasonable person to find him guilty of murder. On July 25, 2002, the Illinois Appellate Court affirmed the trial court's ruling. Petitioner then

3

filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, raising two claims: (1) the evidence presented at trial was insufficient to prove him guilty; and (2) the appellate court erred in assessing the sufficiency of the trial evidence because his custodial statements should not have been construed as a confession. The PLA was denied in December 2002.

In January 2003, petitioner filed a *pro se* postconviction petition under 725 ILCS 5/122-1 that raised nine claims. When the trial court appointed counsel, petitioner amended his complaint to include only two claims: (1) that trial counsel was ineffective for failing to seek suppression of petitioner's inculpatory statements on the grounds that the police arrested him in his parents' home without a warrant; and (2) direct appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness regarding the suppression issue. The trial court dismissed the amended petition in December 2008. Petitioner appealed again, and his appeal was denied.

Morales then filed a *pro-se* postconviction PLA to the Illinois Supreme Court in 2010. The PLA purported to raise the following eight claims: (1) postconviction trial counsel was ineffective for persuading the petitioner to withdraw claims raised in his *pro se* petition; (2) the trial court erred in instructing the jury that it could convict the petitioner of crimes that were not alleged in the indictment; (3) the prosecution's proffered jury instructions altered the essential elements of knowing murder; (4) the prosecution violated petitioner's procedural due process rights by submitting instructions that failed to include elements necessary to sustain a finding of knowing murder; (5) the prosecution's jury instructions were not entitled to a presumption of correctness; (6) the jury was led to an ultimate fact of guilt based on incorrect jury instructions; (7) trial counsel was ineffective for failing to ask potential jurors whether their views on street gangs would prevent them from being impartial; and (8) post-conviction appellate counsel's

motion to withdraw was ineffective. The Illinois Supreme Court denied the PLA in November 2010. Thereafter, Morales filed the instant habeas petition.

### III. Legal Analysis

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner is entitled to habeas relief when a decision of the state court is 'contrary to' or 'an unreasonable application of' clearly established federal law as determined by the United States Supreme Court." *Burr v. Pollard*, 546 F.3d 828, 831 (7th Cir. 2008) (quoting 28 U.S.C. §2254(d)(1)). "A decision is 'contrary to' Supreme Court precedent when it relies on a rule that conflicts with that precedent or reaches a different result in a similar case." *Burr*, 546 F.3d at 831. "A state court unreasonably applies clearly established law if it 'identifies the correct governing legal principle…but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Error alone is not sufficient. *Burr*, 546 F.3d at 831. The state court's decision must be "objectively unreasonable." *Id*.

In order to present a viable claim for federal habeas review, the petitioner must establish that he exhausted all applicable state court remedies and that his claims are not procedurally defaulted. *See* 28 U.S.C. §2254(b). With respect to exhausting all state court remedies, "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A federal court is precluded from reaching the merits of a claim in a §2254 petition based on procedural default if the claim "was presented to the state courts and the state court ruling against the petitioner rests on adequate and independent state-law procedural grounds," or the claim "was not presented to the state courts

5

and it is clear that those courts would now hold the claim procedurally barred." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 & n. 1 (1991)). "Thus, when the habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim." *Id.* There is a limited equitable exception to a procedural default if the petitioner can demonstrate that an external impediment blocked him from asserting his federal claim in the state court and actual prejudice resulted therefrom. *Perruquet,* 390 F.3d at 514-15.

Respondent concedes that petitioner has exhausted his state court remedies and that his claims are not barred by the applicable statute of limitations or non-retroactivity doctrine. However, respondent argues that petitioner's first, third and fourth claims are procedurally defaulted.

*A. Claim 1 - Coerced Statements*

Petitioner's first claim for habeas relief alleges that his inculpatory statements to police were involuntary and coerced. Respondent argues that petitioner procedurally defaulted this claim because he did not raise it in his PLA to the Illinois Supreme Court on direct appeal. This Court agrees. In his PLA on direct appeal, petitioner did reference his statements to police, however he did not argue that those statements were involuntary or coerced. Instead, petitioner's arguments in the PLA related to those statements were limited to his belief that the statements were not incriminating and did not constitute a confession. Because petitioner did not present the theory that his statements to police were involuntary and coerced to the Illinois Supreme Court in his PLA on direct appeal, that claim is procedurally defaulted. *Suh v. Pierce*, 630 F.3d 685,

690 (7th Cir. 2011). Further, petitioner cannot cure this procedural default because he has not shown good cause for the default, actual prejudice from the alleged error, or that failure to consider this claim will result in a fundamental miscarriage of justice. *See Coleman v. Thomson*, 501 U.S. 722, 750 (1991); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002).

### *B. Claim 2 - Insufficient Evidence*

In his second claim, Morales argues that the trial evidence was not sufficient to convict him of first-degree murder under an accountability theory. Specifically, Morales argues that the state failed to prove that he knew Quezada intended to shoot Rodriguez, or that Morales' role in the shooting "went beyond - at most - his having driven Quezada to a location a few blocks away from the school." In order to prevail on this claim, petitioner must show that the contested state court decision "was contrary to, or involved an unreasonable application of" clearly established Supreme Court precedent, or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2).

A state court's decision is "contrary to" clearly established federal law only if the court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams v. Taylor*, 529 U.S. 362, 405 (2000), or "decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision involves an "unreasonable application" of Supreme Court precedent only if it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

The Illinois Appellate Court's finding that there were sufficient facts in the record to find Morales guilty of first-degree murder under an accountability theory was not contrary to clearly established federal law, or an unreasonable application Supreme Court precedent. The Illinois Appellate Court relied on *Jackson v. Virginia*, which applies to challenges to the sufficiency of trial evidence. 43 U.S. 307 (1979). Further, the state appellate court's finding that the trial evidence permitted a rational jury to conclude that petitioner and Quezada shared a common criminal design on "Deuce killer day", and that, viewed in the light most favorable to the prosecution, the trial evidence demonstrated that petitioner aided and facilitated the commission of the offense, and that he was legally responsible under a theory of accountability, was not unreasonable. Accordingly, Morales is not entitled to habeas relief based on his second claim.

*C. Claims 3 and 4 - Ineffective Trial and Appellate Counsel*

Petitioner's final two claims allege ineffective trial and appellate counsel, respectively. Similar to petitioner's claim regarding his statements to police, these claims are procedurally defaulted because they were not properly raised in his postconviction PLA. *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Petitioner cannot cure this procedural default because he has not shown good cause for the default, actual prejudice from the alleged error, or that failure to consider this claim will result in a fundamental miscarriage of justice. *See Coleman v. Thomson*, 501 U.S. 722, 750 (1991); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002).

Moreover, even if these claims were properly before this Court, they would be denied on the merits and are not grounds for granting habeas relief. Morales claims that his trial counsel was ineffective for failing to seek to suppress his custodial statements as the fruit of an unlawful arrest under *Payton v. New York*, 445 U.S. 573 (1980). Morales claims that his appellate counsel

was ineffective for failing to argue the ineffectiveness of trial counsel on the *Payton* suppression issue.

In order to prevail on his ineffective assistance of counsel claims, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that but for counsel's deficient performance, there was a reasonable probability of a different result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Stallings v. United States*, 536 F.3d 624, 627 (7th Cir. 2008). When considering an ineffective assistance of counsel claim on habeas review, this Court must not only defer to counsel's reasonable choices, but also to the state court's evaluation of the issue. *Winston v. Boatwright*, 649 F.3d 618, 625 (7th Cir. 2011).

In petitioner's postconviction appeal, the state appellate court rejected his claims that trial and appellate counsel were ineffective for failing to move to suppress his custodial statements under *Payton*. The appellate court reasoned that a motion to suppress under *Payton* would have been unsuccessful because uncontested evidence from a separate suppression hearing demonstrated that Morales' father consented to the police entry of his home. Therefore, Morales' arrest did not violate *Payton* and failure to move to suppress his custodial statements under *Payton* did not constitute ineffective assistance of counsel. The state appellate court's decision was not contrary to established federal law, or objectively unreasonable. Accordingly, if Morales had not procedurally defaulted these claims, they would have been denied on the merits. *See Ebert v. Gaetz*, 610 F.3d 404, 415-16 (7th Cir. 2010).

### IV. Certificate of Appealability

Finally, the Court finds that a certificate of appealability should not issue in this case. A certificate of appealability may only issue if the applicant has made a substantial showing of the

denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. Daniel*, 529 U.S. 473, 484 (2000). Morales has not made such a showing. Further, it is not debatable that Morales' claims are procedurally defaulted and/or lack merit. *Slack*, 529 U.S. at 484.

### *V. Conclusion*

For the reasons set forth above, Mr. Morales' petition for habeas corpus relief is denied in its entirety.

**ORDERED:** Pablo Morales' petition for writ of habeas corpus relief [6] is denied. All pending motions are denied as moot and this case is terminated.

E N T E R:

George W. Lindberg
Senior U.S. District Court Judge

DATED: April 10, 2012